United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

PETER HART,

        Petitioner,

  vs.

MICHAEL MARTEL, Warden,

        Respondent.

                              /

No. C 07-0357 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

Petitioner was convicted by a Lake County Superior Court jury of manufacturing methamphetamine, *see* Cal. Health & Safety Code § 11379.6(a), being armed with a firearm during the commission of the offense, *see* Cal. Penal Code § 12022(a), and destroying evidence, *see* Cal. Penal Code § 135. He was sentenced to prison for thirteen years.

The California Court of Appeal affirmed the judgment in an unpublished opinion, and the California Supreme Court denied petitioner's Petition for Review. Ex. G, K.[1]

///

---

[1] Citations to "Ex." are to the record lodged with the court by the Attorney General.

Petitioner does not dispute the following facts, which are excerpted from the opinion of the California Court of Appeal:

> On March 17, 2004, Sergeant Craig Clausen attempted to contact Julie Jones as part of an investigation he was conducting on a case. Clausen saw Jones in front of a trailer at the Lake Land Resort, a mobile home park, in Clearlake. As he exited from his unmarked patrol car, Jones ran into the trailer. Clausen called for additional assistance.
>
> Officer Michael Ray responded to the scene. He informed Clausen that there was a warrant for Jones's arrest and that he was attempting to execute it. The officers "locked [the trailer] down" to assure that no one entered or exited from it. They confirmed the validity of the arrest warrant for Jones and then gave "knock and notice" at the front door of the trailer. After receiving no response after several attempts demanding entry, Ray proceeded to the back door of the trailer and forced entry. As he entered the trailer, he saw defendant holding a glass coffee pot. Ray ordered him to stop, but defendant proceeded to the bathroom where he tossed the contents of the pot into the toilet and flushed it. Ray and Officer Brady thereafter detained defendant.
>
> Ray found Jones in the living room and arrested her. He detected a heavy chemical odor in the residence and advised Clausen, who had remained at the front of the trailer, that he believed there was a clandestine methamphetamine laboratory inside the trailer. Clausen instructed Ray and the other officers at the scene to do a security sweep of the residence for safety purposes. During the sweep, the officers detained Gina Ford and Jennings Brian Jackson. Upon inspecting the residence, Clausen found a plastic container and tubing that he recognized as items used to make an HCL generator, an item commonly used in the latter portion of methamphetamine manufacture. He also located the coffee pot in the bathroom that had red staining consistent with its having been used in the manufacture of methamphetamine. He further observed that defendant's and Jackson's hands had red stains on them. The stains are commonly associated with a transfer exposure in methamphetamine manufacture. Clausen called the Lake County Narcotics Task Force and requested its assistance.
>
> Tim Celli, an officer with the Lake County Narcotic Task Force, responded to the scene. The area was evacuated. The officers obtained a search warrant and searched the property the following day. In a search of the residence, Celli found a police scanner in the living room; and a baggy containing 11.16 grams of ephedrine, an Ace acetone can, and muriatic acid in the kitchen. In the bedroom, he found two glass methamphetamine smoking pipes, plastic baggies used for packaging methamphetamine, a digital gram scale, pharmacy paperwork with defendant's name on it, hospital registration papers in defendant's name, and indicia in the name of Julie Jones. In addition, the officers found an unloaded revolver handgun in a drawer containing women's clothes in the bedroom. Celli opined that the gun did not appear operational, and it was missing a trigger guard. A photograph of defendant and another male was displayed on a shelf to the right of the bed. Defendant's fingerprints were found on the coffee pot, an acetone can, and an empty glass jar. No fingerprints were found on the gun.

> Based on the evidence seized and his investigation, Celli opined that the occupants of the residence were in the beginning phases of manufacturing methamphetamine.
>
> In defense, defendant sought to show that he did not live in Jones's trailer.

Ex. G at 1–3.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412–13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

3

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n2 (9th Cir. 2000). Because the California Supreme Court denied petitioner's petition for review without comment, the last reasoned opinion here is that of the California Court of Appeal.

## DISCUSSION

**I.   Analysis**

Petitioner asserts that the trial court violated his constitutional rights by refusing one of his requested jury instructions.   Am. Pet. at 6.

The issue here was the only issue presented on direct appeal.  The court of appeal explained the state law background:

> Subdivision (a)(1) of section 12022 provides in pertinent part: "[A]ny person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless the arming is an element of that offense. This additional term shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm." Subdivision (a)(1) of section 12022 imposes both personal and vicarious liability because it does not limit liability to defendants who are personally armed. (*People v. Bland* (1995) 10 Cal. 4th 991, 998 & fn. 3 (*Bland*).)
>
> In *Bland, supra,* 10 Cal.4th at page 995, the court addressed the issue of whether a defendant who is convicted of a possessory drug offense is subject to the arming enhancement of section 12022 when the evidence shows that the firearm was found in close proximity to the drugs in a place frequented by the defendant even though he was not present when the police seized the items from his house. The court explained that the defendant need only have the weapon available for use to further the commission of the underlying felony in order to be armed within the meaning of the statute. (*Bland*, at p. 999.)  The court held that contemporaneous possession of illegal drugs and a firearm satisfies the statutory arming requirement "only if the evidence shows a nexus or link between the firearm and the drugs.... [¶] ... With respect to felony drug possession, a defendant is armed 'in the commission' of that crime so long as the defendant had the firearm available

4

for use in furtherance of the drug offense at some point during the defendant's possession of the drugs. Thus, by specifying that the added penalty applies only if the defendant is armed with a firearm 'in the commission' of the felony offense, section 12022 implicitly requires both that the 'arming' take place *during* the underlying crime and that it have some '*facilitative nexus*' to that offense. Evidence that a firearm is kept in close proximity to illegal drugs satisfies this 'facilitative nexus' requirement...." (*Id*. at p. 1002.) Thus, when the evidence shows that a firearm was found in close proximity to illegal drugs in a place frequented by the defendant, "a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession." (*Id.* at pp. 1002-1003.)

> The *Bland* court concluded that the evidence was sufficient to support the finding that the defendant was armed with an assault weapon in the commission of the drug offense because the weapon was found in the same room and in close proximity to the drugs found there. (*Bland*, *supra*, 10 Cal. 4th at p. 1004.) The court further concluded that the court's omission of the word "knowingly" in the standard CALJIC No. 17.15 instruction defining the term "armed with a firearm" was harmless error and did not require reversal. (*Bland*, at pp. 1005-1006.)

Ex. G at 3-4.

The court of appeal set out petitioner's argument:

> Defendant argues that the trial court erred in denying his request that the jury be instructed in the language of CALJIC No. 17.16.2, which provides: "A defendant who unlawfully possesses [drug substance] and maintains that substance in proximity to a firearm, in a place that [he][she] frequents, is armed with that firearm if you find beyond a reasonable doubt that, [¶] 1. The defendant knew of the presence of the firearm; [¶] 2. The presence of the firearm, together with the [drug substance], was not accidental or coincidental; and [¶] 3. At some point during the period of illegal possession of [drug substance], the defendant was present with both the [drug substance] and the firearm so that the firearm was available for the defendant to put to immediate use to aid in the unlawful possession of the [drug substance]." [FN2. CALJIC No. 17.16.2 is based on the *Bland* court's decision to address the situation when a defendant is not physically present when the drug substance and weapon are recovered. Its title specifically references section 12022, subdivision (c), the statutory provision applying to defendants who are personally armed with a firearm in the commission of a specified drug offense. That subdivision is not at issue in this case.]

*Id.* at 4-5.[2]

---

[2] The instruction that the trial judge gave the jury in regards to the Section 12022(a) enhancement count read:

> "It is alleged in Count One that in the commission of the felony described

5

The court then rejected the claim, discussing only state law:

> Defendant acknowledges that the jury found the arming enhancement true under the theory of vicarious liability based on Jones's possession of the firearm, but argues that he was entitled to an instruction pursuant to CALJIC No. 17.16.2 to argue that Jones's possession of the firearm was by accident or coincidence. Yet there was no evidence before the jury that this was the case, nor did defendant proffer any argument that the firearm was in the trailer by accident or coincidence. It is well settled that the trial court "is never required to give any instructions that would have had no foundation in the evidence or in any theory on which the case was tried." (*People v. Brunt* (1972) 24 Cal. App. 3d 945, 955-956; *see also People v. Ponce* (1996) 44 Cal. App. 4th 1380, 1386 [court has authority to refuse requested instructions on defense theory for which there is no supporting evidence].) [FN3. omitted.] Defendant's suggestion that there was no nexus between the firearm and the manufacture of the methamphetamine is a theory he advances for the first time on appeal. Defendant did not argue this theory below and there was no evidence presented on it in the trial court. The trial court properly refused to instruct on a theory for which no evidence had been presented. (*Ibid.*) [FN4. The issue of whether CALJIC No. 17.15 adequately apprises a jury of the need for a "facilitative nexus" between the handgun and the underlying crime is currently before our Supreme Court in *People v. Pitto* (2005) 133 Cal. App. 4th 1544, review granted Feb. 8, 2006, S139609.]
>
> Finally, contrary to defendant's argument, *Bland* did not add an element to the section 12022 enhancement requiring that the possession of a firearm be nonaccidental or noncoincidental. The *Bland* court, in stating that a jury could infer that a firearm's presence together with drugs was not accidental or coincidental based on evidence that the firearm was found in close proximity to the illegal drugs, was not adding an element to the arming enhancement but simply setting forth an inference a jury could reasonably deduce from the evidence.

*Id.* at 4-5.[3]

---

therein a principal was armed with a firearm, namely: a .22 caliber pistol. If you find the defendant guilty of the crime charged, you must determine whether a principal in that crime was armed with a firearm and at the time — at the time of the commission or attempted commission of the crime."

"A principal in a commission of a felony is one who either directly or actively commits or attempts to commit the crime or who aids and abets the commission or attempted commission of the crime. The term 'armed with a firearm' means knowingly to carry a firearm or to have it available for offensive or defensive use. The word 'firearm' includes a pistol, revolver, shotgun or rifle. The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true."

RT 292 (applying CALJIC 17.15).

[3] In *People v. Pitto*, which had not been decided at the time of the court of appeal's opinion, the California Supreme Court quoted from and applied *Bland*: "*Bland* summarized these principles as follows: '[W]hen the prosecution has proved a charge of felony drug

"A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. The error must so infect the entire trial that the [petitioner] was deprived of his right to a fair trial guaranteed by the due process clause of the fourteenth amendment." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988) (citations omitted). The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *Walker v. Endell*, 850 F.2d 470, 475–76 (9th Cir. 1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155).

Petitioner claims that the trial court's refusal to give his proposed instruction violated his due process rights by preventing him from presenting a defense, namely that Jones' possession of the gun was accidental or coincidental. Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Therefore, a criminal defendant is entitled to adequate instructions on the defense theory of the case. *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence).

///

---

possession, and the evidence at trial shows that a firearm was found in close proximity to the illegal drugs in a place frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession. These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was 'armed with a firearm in the commission' of a felony within the meaning of section 12022.'" ([*People v.*] *Bland,* [] 10 Cal. 4th 991, 1002–1003 [1995])." *People v. Pitto*, 43 Cal. 4th 228, 238 (2008). In *Pitto* the court concluded that CALJIC No. 17.15 – the instruction at issue here – was sufficient on the arming charge, absent evidence that the possession was accidental or coincidental. *Id.* at 240.

The right to an instruction on a defense theory is not unlimited: a defendant is entitled to such an instruction only "if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." *United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotations omitted). Here, that there was no evidence that the presence of the gun was accidental or coincidental means that petitioner did not have a right to the instruction. This lack of evidence to support giving the instruction is fatal to petitioner's claim.

## II.   Certificate of Appealability

A district court that denies a habeas petition must grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate of appealability may be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a petition has been denied on the merits, as here, to obtain a COA a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This was not a close case. Jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner may not appeal the denial of a COA, but may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. A certificate of appealability is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  August 29, 2011.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.07\HART357.RUL2.wpd

8